Dale M. Cendali
Joshua L. Simmons
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
dale.cendali@kirkland.com
joshua.simmons@kirkland.com

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IBM CORPORATION AND IBM CANADA LTD., | Case No.  7:16-cv-7989 |
| Plaintiffs, | ECF Case |
| - against - | **DEMAND FOR JURY TRIAL** |
| TERAPROC INC., | |
| Defendant. | |

**COMPLAINT**

Plaintiffs IBM Corporation and IBM Canada Ltd. (collectively, "IBM"), by and through their attorneys, Kirkland & Ellis LLP, for their Complaint, hereby allege against Defendant Teraproc Inc. ("Teraproc") as follows:

**NATURE OF THE ACTION**

1.      This is a case about innovation and corporate theft.  For over a century, IBM has been a leader of the computer industry, investing considerable expertise and creativity both in developing new and also in improving existing technologies.  Teraproc has taken it upon itself to copy IBM's source code and misappropriate its trade secrets to directly compete with IBM. Indeed, Teraproc was founded by and employs individuals who formerly worked for IBM—

including without limitation William Lu, James Pang, and Meng Ding—(the "IBM Employees"), who have copied IBM's proprietary code into Teraproc's products.  This is classic copyright infringement and trade secret misappropriation, and violates the IBM Employees' contractual and fiduciary duties.  IBM has been forced to file this lawsuit to stop Teraproc's improper activities.

2.      The computer program that Teraproc copied from IBM is a load sharing facility ("LSF") called Spectrum LSF, which is used in high-performance computing to manage the workload and schedule the exchange of data between different parts of a network.  The IBM Employees had worked on Spectrum LSF and its predecessor computer programs (known as Platform LSF) and, upon information and belief, when they left IBM, they took IBM's confidential and proprietary source code with them.  As a result, Teraproc has been able to market its own LSF, called OpenLava, to IBM's customers, pitching it as a less expensive substitute for IBM's Spectrum LSF.  OpenLava is less expensive because Teraproc stole what it had not created, passing off the inventiveness of Spectrum LSF as Teraproc's own.

3.      In this action, IBM seeks to recover damages that it has suffered and to prevent the irreparable harm that it has faced and continues to face as a result of Teraproc's willful infringement and misappropriation of IBM's valuable intellectual property rights in and to Spectrum LSF and its predecessors.  IBM also seeks to remedy Teraproc's tortious interference with IBM's contracts with the IBM Employees, and Teraproc's aiding and abetting of the IBM Employees' breach of their fiduciary duties.

4.      Teraproc's illegal opportunism and its willful infringement and misappropriation leave IBM no choice but to file this lawsuit seeking injunctive relief and recovery of damages that it has suffered as a result of Teraproc's (1) direct, contributory, and vicarious copyright

infringement under the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*; (2) misappropriation of

IBM's trade secrets under the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836(b)(1);

(3) misappropriation of IBM's trade secrets under New York state law; (4) tortious interference

with contract; and (5) aiding and abetting a breach of fiduciary duty.  Unless halted, Teraproc's

illegal actions will serve as an encouragement to other companies to similarly violate the

intellectual property rights of true innovators, like IBM, without investing in their own research

and development.

## PARTIES

5.      Plaintiff IBM Corporation is a New York corporation with its principal place of

business in the State of New York.  It is qualified to do business and is doing business in the

State of New York.  IBM is, and at all times material herein was, a leading technology company.

6.      Plaintiff IBM Canada Ltd. is a Canadian corporation with its principal place of

business in Ontario, Canada.

7.      Defendant Teraproc is a Canadian corporation with its principal place of business

in Toronto, Canada.  Upon information and belief, Teraproc is qualified to do business and is

doing business in this District, including by soliciting IBM customers with offices in this

District.  In addition, Teraproc's website is available in this District, and is hosted by 1&1

Internet Inc., which is located within 100 miles of this Court's courthouse.  Materials have been

downloaded from Teraproc's website to computers located within this District.

## JURISDICTION AND VENUE

8.      This action arises under the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*, the

Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836, as amended, and New York state law.

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338 and 1367.

9.      Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400.

**ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF**

I.      **IBM, Its Long History of Innovation, and the Development of Spectrum LSF**

10.     Founded over a century ago, IBM has long been one of the world's leading

technology companies, pioneering the field of information technology and remaining at the

forefront of a worldwide industry that revolutionizes the way in which enterprises, organizations,

and people operate and thrive.

11.     One of the areas in which IBM excels is high-performance computing, which

allows advanced computer programs to run efficiently using multiple processors working

simultaneously.  When those parallel processors exist in multiple locations, network managers

use LSFs.

12.     IBM has been particularly successful in the development of LSF systems and

software.  It has continued to develop them through its own engineering and by acquiring

technologies created by other companies, and using IBM's know-how to improve them.

13.     For example, in 2011, IBM announced that it would acquire a company named

Platform Computing ("Platform"), which had developed cluster, grid, and cloud management

software for distributed computing environments.  Platform's software, called Platform LSF, was

designed to help clients create, integrate, and manage shared computing environments that are

used in computer- and data-intensive applications, such as simulations, computer modeling, and

analytics.

14.     Through the acquisition, IBM was able to improve Platform LSF by combining it

with IBM's own systems and software.  The new program, Spectrum LSF, improved

infrastructure flexibility and reduced the time that it takes to reach computational results,

improving IBM's ability to serve enterprise clients that need to accelerate application performance.

15.     The latest version of Spectrum LSF has several features and benefits to IBM's customers.  It offers significant performance improvement with 5.8 times greater throughput than previous IBM Spectrum LSF versions and up to 150 times greater throughput than other open-source solutions.  It provides information in an understandable way so that if a job is not running as scheduled, a network administrator can understand why and when it will run.  It supports the use of mobile devices for monitoring and notifications, integrates into Windows desktops to simplify submission and monitoring of network tasks, and offers "RESTFUL APIs" which assist in integration with business processes.  Additionally, it improves productivity with web-enabled job and workflow user interfaces.

16.     IBM derives revenue from licensing copies of, as well as providing maintenance and support services for, Spectrum LSF, which has been embedded in the offerings of IBM and its customers.

## II.     IBM's Innovations Are Protected By Intellectual Property and Other Rights

17.     Spectrum LSF and its predecessors are of great value to IBM and its customers. IBM protects that value by maintaining copyright and trade secret protection over the computer program and the know-how used to develop it, as well as ensuring that its employees are obligated to maintain the secrecy of IBM's technologies.

18.     IBM has invested vast resources—including time, effort, talent, creativity, and money—to produce Spectrum LSF.  The software embodies a series of original, creative choices by IBM and Platform and constitutes copyrightable subject matter under the copyright laws of the United States.

19.      IBM holds the copyrights for each version of Platform LSF and Spectrum LSF (the "Works").  Attached as **Exhibit A**, and incorporated by reference, are copies of Certificates of Registration issued by the Copyright Office for the Works.  Those certificates show the date upon which IBM applied for the Certificate of Registration, the date on which the certificate was issued, and the registration number assigned.

20.      The Works—which feature uniquely expressed source code, object code, structure, architecture, modules, algorithms, data structures, and control instructions—are creative computer programs that were the product of engineering discretion and substantial skills, resources, and creative energies.  The Works also are of great value to IBM and are used daily by its numerous customers.

21.      IBM is the sole owner and proprietor of all right, title and interest in and to the copyrights in the Works.  The copyrights in the Works are presently valid and subsisting and were valid and subsisting at all times affecting the matters complained of herein.

22.      Moreover, IBM is the sole owner and proprietor of all right, title and interest in and to certain trade secrets relating to its proprietary LSF software, including the software's source code and the know-how used to develop it (the "Trade Secrets"), in which IBM invested significant time, money, and human resources.

23.      Because this information is so valuable to IBM, IBM takes steps to ensure that those who receive access to the Trade Secrets, such as the IBM Employees when they were employed by IBM, are bound by strict confidentiality obligations.  IBM's Agreement Regarding Confidential Information, Intellectual Property, Non Solicitation and Other Matters (the "IBM Agreement") specifically addresses IBM's confidential information and materials, defining them as:

- 6 -

> any information or material: (a) generated or collected by or utilitized in the operation of IBM or its Affiliates, received form any third party, or suggested by or resulting from any task assigned to me or work performed by me for or on behalf of IBM or its affiliates, and (b) which has not been made available generally to the public, whether or not expressed in a document or other medium and whether or not marked "IBM Confidential" or with any similar legend of IBM or its affiliates or any third party.  Confidential information or material may include, but is not limited to, information and material related to past, present and future development, manufacturing activities, or personnel matters; marketing and business plans; technical specifications, drawings, and designs; prototypes; ***computer programs***; and databases.

IBM Agmt. ¶ 1 (emphasis added).

24.     The IBM Agreement also provides that signatories will not "disclose to anyone outside of IBM and its Affiliates or use in other than IBM's business, either during or after [their] employment, any confidential information or material of IBM."  *Id.*  It further requires that, if an employee were to leave IBM, he or she would "return to IBM all property in [their] possession belong to IBM" including without limitation "diskettes and other storage media, drawings, notebooks, reports, and other documents."  *Id.*

25.     Platform's Employee Agreement (the "Platform Agreement") includes similar provisions, defining the term "Proprietary Information" to include both software and other information about Platforms' products, and requiring that employees acknowledge and agree that Platform's software "constitutes a valuable asset and contains valuable trade secrets of Platform, embodying substantial creative efforts and significant expenditures of time and money."  Platform Agmt. ¶¶ 1.1–2.1.  Moreover, the Platform Agreement requires that employees "shall hold Proprietary Information in confidence and use Proprietary Information only to perform the stipulated services for Platform and for no other purpose."  *Id.* ¶ 2.1.

26.     In addition to the foregoing contractual provisions, IBM's source code is maintained in a protected database, to which only certain employees are granted access.

III.    **Teraproc and Its OpenLava Software**

27.    In 2007, Platform released a fork of Platform LSF called Lava 1.0 under the GNU General Public License.  Lava 1.0 was a stripped down version of Platform LSF version 4.2, which had been released in 2001.  It did not include all of the source code or functionality of Platform LSF version 4.2, and it did not include subsequent improvements to Platform LSF.

28.    In 2008, one of Platform's employees, David Bigagli, used Lava 1.0 to create a derivative computer program that he called OpenLava 1.0.  In 2010, Mr. Bigagli left Platform, but continued to work on the OpenLava program.  To the extent that Mr. Bigagli used Lava 1.0 and then contributed original source code or features to OpenLava, neither Platform nor IBM objected to this use.

29.    Teraproc was incorporated in 2014 by former IBM employee William Lu.  In fact, Mr. Lu incorporated Teraproc less than 90 days after his departure from IBM, and was joined at Teraproc shortly thereafter by Mr. Bigagli, James Pang, and Meng Ding, each of whom had worked on Platform LSF while working for Platform and (in the cases of Messrs. Lu, Pang, and Ding) Spectrum LSF at IBM.

30.    Teraproc was created to commercialize the OpenLava program and to compete with IBM's Spectrum LSF.

31.    Unwilling to expend the time, creativity, or resources to create its own LSF, however, the IBM Employees, now working for Teraproc, copied IBM's source code and other proprietary know-how.  They then used IBM's technologies to create OpenLava 3.0 and each subsequent release.  In fact, Teraproc has touted in its marketing materials that its employees have "decades of experience with Platform LSF" and that they have used that information to develop OpenLava.

32.     Teraproc took it upon itself, without any license or authorization from IBM, to copy IBM's Works and Trade Secrets to develop new versions of OpenLava, violating IBM's intellectual property rights.  It also induced the IBM Employees to breach their contractual agreements and aided and abetted the IBM Employees' breach of their fiduciary duties to IBM. In so doing, Teraproc infringes IBM's valuable and proprietary creative expression, violates IBM's right to the exclusive use of its creative products in contraventions of its copyrights in the Works, and improperly uses IBM's confidential Trade Secrets.

33.     By virtue of its infringing activities and misappropriation, Teraproc directly competes with IBM's own attempts to monetize Spectrum LSF.  In fact, Teraproc has convinced IBM customers to substitute Teraproc's OpenLava for IBM's Spectrum LSF program.

## IV.     The Harm to IBM

34.     As discussed above, IBM receives revenue from its own use of Spectrum LSF, and the licensing of Spectrum LSF to customers for incorporation into their own offerings.

35.     Teraproc's willful infringement robs IBM of those revenues as its OpenLava program supersedes the use of IBM's LSF.  Thus, Teraproc (1) profits commercially without paying the price for the use of IBM's intellectual property, and (2) reduces and causes substantial harm to the value of the Works.  As a result, IBM has been damaged by Teraproc's conduct in an amount to be determined according to proof at trial.

36.     Upon information and belief, unless enjoined by this Court, Teraproc intends to continue to infringe upon IBM's copyrights and otherwise to profit from IBM's Works. Accordingly, IBM has suffered irreparable harm and will continue to suffer irreparable harm unless Teraproc is enjoined.  IBM has no adequate remedy at law to redress all of the injuries

that Teraproc has caused and intends to cause by its conduct.  IBM will continue to suffer

irreparable damage until Teraproc's actions alleged above are enjoined by this Court.

37.     Teraproc's actions also significantly harm innovation.  If Teraproc's copying

allows it to appropriate IBM's substantial investment in research and development, other

companies will be encouraged to simply copy others' proprietary technologies rather than to hire

engineers, invest in innovation, and develop new technologies.  That result would significantly

threaten the American economy and global innovation.

### CLAIMS FOR RELIEF

### COUNT I
### Copyright Infringement under the Copyright Act (17 U.S.C. § 101 *et seq.*)

38.     IBM repeats and realleges each and every allegation above as if fully set forth

herein.

39.     The Works are original, creative works and copyrightable subject matter under the

copyright laws of the United States.

40.     IBM is the owner of valid copyrights in the Works, and the Register of

Copyrights has issued valid Certificates of Registration as indicated in Exhibit A.

41.     IBM has complied in all respects with 17 U.S.C. §§ 101 *et seq.*, and has secured

the exclusive rights and privileges in and to the copyrights in its LSF software.

42.     By its actions, alleged above, Teraproc has infringed and will continue to infringe

IBM's copyrights in and relating to IBM's LSF software by, *inter alia*, reproducing, distributing,

and creating derivative works based on the Works without any authorization or other permission

from IBM.

43.     Teraproc's infringement of IBM's copyrights has been deliberate, willful, and in

utter disregard of IBM's rights.

44.     Upon information and belief, as a direct and proximate result of its wrongful conduct, Teraproc has obtained benefits to which Teraproc is not entitled.

45.     As a direct and proximate result of Teraproc's wrongful conduct, IBM has been substantially and irreparably harmed in an amount not readily capable of determination.  Unless restrained by this Court, Teraproc will cause further irreparable injury to IBM.

46.     IBM is entitled to injunctive relief enjoining Teraproc, its agents and employees, and all persons acting in concert or participation with it, from engaging in any further infringement of IBM's copyrighted LSF software.

47.     IBM is further entitled to recover from Teraproc the damages, including attorney's fees and costs, it has sustained and will sustain, and any gains, profits and advantages obtained by Teraproc as a result of its acts of infringement as alleged above.  At present, the amount of such damages, gains, profits, and advantages cannot be fully ascertained by IBM, but will be established according to proof at trial.  IBM also is entitled to recover statutory damages for Teraproc's willful infringement of its copyrights.

## COUNT II
### Violation of the Defend Trade Secrets Act (18 U.S.C. § 1836)

48.     IBM repeats and realleges each and every allegation above as if fully set forth herein.

49.     IBM is the owner of certain valuable Trade Secrets contained in and relating to IBM's Spectrum LSF and its predecessors.  These Trade Secrets are related to IBM's products and services that are used in or intended for use in interstate or foreign commerce.  As stated above, IBM sells its Spectrum LSF software throughout the United States.

50.     The IBM Employees were in possession of the foregoing IBM Trade Secrets subject to confidentiality agreements in which they expressly acknowledged and confirmed the confidential nature of these trade secrets.

51.     Other than through Teraproc's improper disclosure, the Trade Secrets are not known to the public and are not readily ascertainable by proper means to persons who could derive value from their disclosure or use.

52.     IBM has taken reasonable steps to maintain the secrecy of its Trade Secrets, including by requiring confidentiality and/or nondisclosure agreements to be signed by any party granted access to IBM's Trade Secrets.  These confidential and proprietary Trade Secrets are of substantial economic value and have conferred a competitive advantage on IBM.

53.     Teraproc has and continually will misappropriate IBM's Trade Secrets by using these Trade Secrets, without authority, in its OpenLava software.  In particular, Teraproc's software is intended to substitute for IBM's software in such a way that requires use of IBM's Trade Secrets.  By doing so, Teraproc has used IBM's proprietary Trade Secrets without permission and in violation of its founders' and employees' confidentiality obligations.

54.     Teraproc's misappropriation comprises acts, including without limitation use of IBM's Trade Secrets, on or after the date of the enactment of the Defend Trade Secrets Act.

55.     Teraproc's current and continued misappropriation of IBM's Trade Secrets is reckless and malicious.  Teraproc knows of the confidentiality, ownership, and use restrictions on the Trade Secrets, which its employees agreed to abide by in signing their confidentiality agreements.

56.     As a result of Teraproc's current and continued misappropriation of IBM's Trade Secrets, IBM will suffer imminent and irreparable harm.

57.     IBM has no adequate remedy at law.  Unless enjoined by this Court, Teraproc's acts of misappropriation will continue and IBM will continue to suffer irreparable harm.

<u>COUNT III</u>
**State Law Trade Secrets Misappropriation**

58.     IBM repeats and realleges each and every allegation above as if fully set forth herein.

59.     IBM is the owner of certain valuable Trade Secrets contained in and relating to IBM's Spectrum LSF software.  These Trade Secrets are for continuous use in the operation of IBM's business.

60.     The IBM Employees were in possession of the foregoing IBM Trade Secrets subject to confidentiality agreements in which they expressly acknowledged and confirmed the confidential nature of these trade secrets.

61.     Other than through Teraproc's improper disclosure, the Trade Secrets are not known to the public and are not readily ascertainable by proper means to persons who could derive value from their disclosure or use.

62.     IBM has taken reasonable steps to maintain the secrecy of its Trade Secrets, including by requiring confidentiality and/or nondisclosure agreements to be signed by any party granted access to IBM's Trade Secrets.  These confidential and proprietary Trade Secrets are of substantial economic value and have conferred a competitive advantage on IBM.

63.     Teraproc has and will continue to misappropriate IBM's Trade Secrets by using these Trade Secrets, without license or authorization, in its OpenLava software.  In particular, Teraproc's software is intended to substitute for IBM's software in such a way that requires use of IBM's Trade Secrets.  By doing so, Teraproc has used IBM's proprietary Trade Secrets without permission and in violation of its founders' and employees' confidentiality obligations.

- 13 -

64.     Teraproc's current and continued misappropriation of IBM's Trade Secrets is reckless and malicious.  Teraproc knows of the confidentiality, ownership, and use restrictions on the Trade Secrets, which its founders and employees agreed to abide by in signing their confidentiality agreements.

65.     As a result of Teraproc's current and continued misappropriation of IBM's Trade Secrets, IBM will suffer imminent and irreparable harm.

66.     IBM has no adequate remedy at law.  Unless enjoined by this Court, IBM's acts of misappropriation will continue and IBM will continue to suffer irreparable harm.

### COUNT IV
### Tortious Interference with Contract

67.     IBM repeats and realleges each and every allegation above as if fully set forth herein.

68.     As discussed above, IBM and Platform and the IBM Employees have entered into contracts, including the Platform Agreement and IBM Agreement, containing confidentiality and use restrictions prohibiting the disclosure of IBM's confidential information.

69.     IBM fulfilled all of its obligations pursuant to those agreements.

70.     As Teraproc is owned and operated by the IBM Employees, it was aware of those agreements and their obligations on the IBM Employees.

71.     Despite its employees and founders agreeing to and signing the Platform Agreement and IBM Agreement, Teraproc has induced, and continues to induce, the IBM Employees to breach their contractual responsibilities by creating OpenLava and disclosing and using IBM's technology and Trade Secrets for purposes expressly prohibited by those agreements.

72.     Teraproc's actions in inducing these breaches of contract were and are intentional, illegal, and have been engaged in for the specific purpose of inducing the IBM Employees to breach their agreements with IBM.

73.     As a proximate result of Teraproc's tortious interference with contract, IBM has been damaged, and Teraproc has been unjustly enriched, in an amount to be determined at trial.

## COUNT V
### Aiding and Abetting Breach of Fiduciary Duties

74.     IBM repeats and realleges each and every allegation above as if fully set forth herein.

75.     As employees of Platform and IBM, the IBM Employees owed and continue to owe fiduciary duties of care, loyalty, and good faith to IBM.  Their fiduciary duties include obligations to discharge their actions in good faith.

76.     As Teraproc is owned and operated by the IBM Employees, it was aware of these duties and obligations.

77.     Despite its employees' and founders' fiduciary duties, Teraproc has aided and abetted, and continues to aid and abet, the IBM Employees to breach their fiduciary duties of loyalty and good faith by, among other things, creating OpenLava and disclosing and using IBM's technology and Trade Secrets for purposes expressly prohibited by those agreements.

78.     Teraproc's actions in aiding and abetting these breaches of fiduciary duty were and are intentional, illegal, and have been engaged in for the specific purpose of aiding and abetting the IBM Employees to breach their fiduciary duties to IBM.

79.     As a proximate result of Teraproc's aiding and abetting of breach of fiduciary duty, IBM has been damaged, and Teraproc has been unjustly enriched, in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs IBM respectfully request judgment against Defendant Teraproc as follows:

A.    Finding that Teraproc has infringed IBM's copyrights in the Works;

B.    Finding that Teraproc has misappropriated IBM's Trade Secrets;

C.    Finding that Teraproc has tortiously interfered with IBM's agreements with the IBM Employees;

D.    Finding that Teraproc has aided and abetted the IBM Employees' breach of their fiduciary duties to IBM;

E.    Finding a substantial likelihood that Teraproc will continue to infringe IBM's intellectual property unless enjoined from doing so;

F.    Issuing a preliminary and permanent injunction enjoining Teraproc and its agents, servants, employees, attorneys, successors and assigns, and all persons, firms and corporations acting in concert with it, from:

    1.    Directly or indirectly infringing IBM's copyrights, including, but not limited to, reproducing, distributing, creating derivative works based upon, publicly performing or publicly displaying any of IBM's computer programs;

    2.    Engaging in further acts of trade secrets misappropriation, and from participating or assisting in any such activity;

    3.    Continuing to induce the breach of IBM's agreements with the IBM Employees by, among other things, modifying or distributing IBM's technology and Trade Secrets; and

4. Continuing to aid and abet the breach of the IBM Employees' fiduciary duties to IBM by, among other things, modifying or distributing IBM's technology and Trade Secrets.

G. Ordering Teraproc to render a full and complete accounting to IBM for Teraproc's profits, gains, advantages or the value of the business opportunities received from the foregoing acts of infringement, misappropriation, tortious interference with contract, and aiding and abetting breaches of fiduciary duty;

H. Entering judgment for IBM against Teraproc for all damages suffered by IBM and for any profits or gain by Teraproc attributable to infringement of IBM's Works, misappropriation of IBM's Trade Secrets, tortious interference with IBM's contracts, and aiding and abetting the breach of the IBM Employees' fiduciary duties in amounts to be determined at trial;

I. Entering judgment for IBM against Teraproc for statutory damages based upon Teraproc's willful acts of infringement pursuant to the Copyright Act, 17 U.S.C. § 101 *et seq.*, and misappropriation pursuant to the Defend Trade Secrets Act, 18 U.S.C. § 1836(b);

J. Entering judgment for IBM against Teraproc for exemplary damages based upon Teraproc's willful and malicious misappropriation pursuant to the Defend Trade Secrets Act, 18 U.S.C. § 1836(b)(3)(C) and New York state law;

K. Entering judgment for IBM against Teraproc for punitive damages in amounts to be determined at trial;

L.      Awarding IBM costs and disbursements of this action, including reasonable attorney's fees and costs pursuant to 17 U.S.C. § 505 and 18 U.S.C. § 1836(b)(3)(D);

M.      Awarding IBM pre-judgment and post-judgment interest, to the fullest extent available, on the foregoing; and

N.      Granting such other, further and different relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs IBM demand a trial by jury on all issues so triable in this action.

Dated:  New York, New York          KIRKLAND & ELLIS LLP
        October 12, 2016

                                    _/s/ Dale M. Cendali_
                                    Dale M. Cendali
                                    Joshua L. Simmons
                                    601 Lexington Avenue
                                    New York, New York  10022
                                    Telephone: (212) 446-4800
                                    Facsimile: (212) 446-4900
                                    dale.cendali@kirkland.com
                                    joshua.simmons@kirkland.com

                                    Attorneys for Plaintiffs